UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

STAY IN MY HOME, P.A.
*fka* STOPA LAW FIRM, P.A.

   Debtor.

Case No. 8:18-bk-08436-RCT

Chapter 7

_____/

STEPHEN L. MEININGER, as Chapter 7
Trustee of the bankruptcy estate of
STAY IN MY HOME P.A. *fka*
STOPA LAW FIRM, P.A.,

   Plaintiff,

v.

WELLS FARGO BANK, N.A.;
U.S. BANK, N.A.; CITIMORTGAGE,
INC.; FEDERAL NATIONAL
MORTGAGE ASSOCIATION; BANK OF
AMERICA, N.A.; THE BANK OF NEW
YORK MELLON; DEUTSCHE BANK
NATIONAL TRUST COMPANY; MTGLQ
INVESTORS, L.P.; BSI FINANCIAL
SERVICES, INC.; HMC ASSETS, LLC;
PRINCE MORRISON; JAMES F.
BUCKMASTER; DEDE M.
BUCKMASTER; JENNIFER NIX; CAROL
A. KAY; JOSHUA A. CRITHFIELD;
CAMERON FOSTER; DAVID
BOWERING; JASON HEBERT; SARAH
HEBERT; TOSHIAKI MIZUTANI; and
CLEOSIDA MIZUTANI,

   Defendants.

Adv. Pro. No.

_____/

**<u>COMPLAINT FOR DECLARATORY AND RELATED RELIEF</u>**

STEPHEN L. MEININGER (the "**Trustee**"), as Chapter 7 Trustee of the bankruptcy estate of STAY IN MY HOME, P.A. *fka* STOPA LAW FIRM, P.A. (the "**Debtor**" or "**Stopa Law Firm**"), through counsel, files this Complaint for Declaratory and Related Relief (the "**Complaint**") against the above-named defendants, and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.      Defendant Wells Fargo Bank, N.A. ("**Wells Fargo**") is a California entity doing business in the State of Florida.

2.      Defendant U.S. Bank, N.A. ("**U.S. Bank**") is a Minnesota entity doing business in the State of Florida.

3.      Defendant CitiMortgage, Inc. ("**CitiMortgage**") is a Missouri entity doing business in the State of Florida.

4.      Defendant Federal National Mortgage Association ("**FNMA**" or "**Fannie Mae**") is an entity organized and existing under the laws of the United States and doing business in the State of Florida.

5.      Defendant Bank of America, N.A. ("**Bank of America**") is a North Carolina entity doing business in the State of Florida.

6.      Defendant The Bank of New York Mellon (**"BNY Mellon"**) is a New York entity doing business in the State of Florida.

7.      Defendant Deutsche Bank National Trust Company ("**Deutsche Bank**") is a California entity doing business in the State of Florida.

8.      Defendant MTGLQ Investors, L.P. ("**MTGLQ**") is a New York entity doing business in the State of Florida.

9.      Defendant BSI Financial Services, Inc. ("**BSI**") is a Florida entity doing business

in the State of Florida.

10.     Defendant HMC Assets, LLC ("**HMC**") is a California entity doing business in the State of Florida.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

12.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). The Trustee consents to the entry of final orders and judgments by this Court.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### FACTUAL AND PROCEDURAL BACKGROUND

14.     On October 2, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with the Clerk of this Court, bearing Case No. 8:18-bk-08436-RCT (the "**Bankruptcy Case**").

15.     The Trustee was appointed and currently serves as the permanent Chapter 7 Trustee for the Debtor's bankruptcy estate.

16.     The Debtor was a law firm specializing in residential mortgage foreclosure defense and related appellate law in the State of Florida.

17.     Mark P. Stopa, Esq. ("**Stopa**") was the Debtor's president and sole shareholder from its inception through on or around July 30, 2018, when he sold his 100% interest in the Debtor to Richard Mockler, Esq. ("**Mockler**"). Mockler was the Debtor's president and sole shareholder on the Petition Date.

18.     On July 27, 2018, the Florida Supreme Court entered an order suspending Stopa from the practice of law on an emergency basis.

19.     According to the Debtor's records, on the Petition Date, the Debtor represented

over 3,600 clients (the "**Stopa clients**") in more than 4,000 active cases (the "**Stopa cases**") at various stages of litigation at the trial and appellate levels throughout the State of Florida.

20.    One of the Debtor's primary sources of revenue was attorney's fees awarded in the successful defense of foreclosure cases. The Debtor's standard client engagement letter states that these fees and "any payment by the bank" belong to the Debtor, whether obtained via entry of judgment or settlement. These assignments were part of the Debtor's business model and clients agreed to them in consideration of the low annual fee that the Debtor charged for its services. The Debtor's standard "form" engagement agreement is attached as **Exhibit A** and contains the following pertinent language:

> You are choosing this approach because you realize that you are not in a financial position to pay us the fees that it would cost to fully litigate all of these issues and you want the fees you have paid to last as long as possible (to ensure that you have counsel representing you in this case for as long as possible). In other words, you are paying the $2,500.00, realizing it is a small amount as far as attorneys are concerned, largely in the hopes that we can help you stay in your home longer, as that may improve your chances of: (i) getting the bank to accept a short sale as payment in full; (ii) getting the bank to re-negotiate or modify your loan (via a reduction in principal, lower monthly payments, lower interest rate, or all three); (iii) refinance your home; (iv) sell your home; and (v) stay in your home without paying your mortgage.

> You understand that we cannot and will not (for ethical reasons) delay your case solely for purposes of delay, but that delay is a merely a byproduct of you defending yourself and forcing the bank to prove its case against you. You also understand and agree that we have not guaranteed you any specific result in this case.

> Your $2,500.00 payment includes all non-nominal costs incurred on this file (administrative expenses, photocopies, postage, faxes, etc.).
>
> ***
> In the event we recover monies through the process of defending this lawsuit, be it via entry of a judgment for fees or any payment by the bank then such funds shall belong to the Firm. You agree that because the Firm charges such a low annual fee that any monies recovered shall belong to the firm. Furthermore, you agree that if we are in a position of obtaining fees, then that is likely because we have procured a good result for you (e.g. a dismissal,) and that we should be rewarded for such result. Moreover, in the event a result is obtained that enables

you to stay in your home, e.g. a loan modification or some other work-out arrangement with a third-party, you shall pay the firm $2,500 for that result.

21.    Mockler testified at a deposition in the bankruptcy case and at the Debtor's 341 meeting that (i) almost all clients signed an engagement letter with provisions such as those described and reproduced above; (ii) in the majority of cases, clients did not pay contractual annual fees due under the engagement letters beyond the initial payment made at the inception of the representation; (iii) in the vast majority of cases, the Debtor continued to represent non-paying clients in anticipation that the Debtor would obtain fees upon prevailing in the case or upon the parties reaching a settlement.

22.    Based upon his investigation to date, which is ongoing, the Trustee estimates that there are over 600 Stopa cases pending in the circuit courts for Florida's Fourth, Sixth, Thirteenth, Seventeenth, and Eighteenth Judicial Circuits involving one of the foreclosure plaintiffs that is named as a defendant in this adversary proceeding, including at least (i) 180 cases involving Wells Fargo; (ii) 73 cases involving U.S. Bank; (iii) 25 cases involving CitiMortgage; (iv) 61 cases involving Fannie Mae; (v) 104 cases involving Bank of America; (vi) 75 cases involving Deutsche Bank; and (vii) 86 cases involving BNY Mellon.[1] Additionally, the Trustee is aware of at least 144 Stopa cases pending in Florida's First, Second, Fourth, and Fifth District Courts of Appeal, many or most of which involve one of the foregoing Defendants. These Defendants are referred to herein as the "**Foreclosure Plaintiffs**."

23.    Based upon the Debtor's client engagement agreements, any claim to attorney's fees in a Stopa case against any of the Foreclosure Plaintiffs is property of the Debtor's bankruptcy estate. Additionally, any proceeds, cash or funds that any of the Foreclosure

---

[1] This is an estimate that does not account for all known and unknown Stopa cases. The Trustee is aware of specific Stopa cases pending in other Florida Judicial Circuits that are not included in the foregoing estimate. Again, the Trustee's investigation is ongoing.

Plaintiffs is obligated to make as a result of the Debtor's representation is property of the estate.

24.    All conditions precedent to the commencement of this action have been performed, waived, satisfied or have otherwise occurred.

### COUNT I – DECLARATORY RELIEF
### (Dispute over fees involving Wells Fargo and Prince Morrison)

25.    The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 1 through 24, above, as though fully set forth herein.

26.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq., seeking a determination that a claim to attorney's fees in a Stopa case is property of the Debtor's bankruptcy estate.

27.    Defendant Prince Morrison ("**Morrison**") is an individual residing in Broward County, Florida and is sui juris.

28.    On or around September 23, 2015, Wells Fargo filed a residential mortgage foreclosure complaint against Morrison with respect to real property located in Lakeland, Florida. The action is currently pending in the Circuit Court for Polk County, Florida bearing Case No. 2015-CA-03440 (the "**Morrison Action**").

29.    On May 19, 2017, the Court in the Morrison Action entered an order granting Morrison's motion for involuntarily dismissal and dismissed the Morrison Action.

30.    On June 13, 2017, Morrison, through Stopa, filed a motion to tax attorneys' fees as the prevailing party in the Morrison Action.

31.    On August 17, 2018, shortly after being suspended from the practice of law, Stopa filed a motion to withdraw as counsel of record for Morrison.

32.    On August 20, 2018, the Court in the Morrison Action entered a case management order scheduling a hearing on the motion to tax attorneys' fees.

33.     On September 18, 2018, Mockler filed an emergency motion to withdraw as counsel and for a 45-day stay of the Morrison Action.

34.     On September 28, 2018, the Court in the Morrison Action held a hearing on the fee motion, but no one appeared. Stopa and Mockler's motions to withdraw both were still pending.

35.     On November 21, 2018, after the Petition Date, the Court in the Morrison Action entered an order denying the fee motion because no one appeared (the "**Morrison Fee Order**").

36.     The Debtor had an interest in Morrison's attorney fee claim based on the assignment in its client engagement agreement, and that interest became property of the Debtor's bankruptcy estate on the Petition Date. The Morrison Fee Order, entered after the Petition Date, without notice to the Trustee and without leave of this Court, violated the automatic stay.

37.     On December 4, 2018, the Trustee filed a motion in the Morrison Action to set aside the Morrison Fee Order.

38.     On December 20, 2018, Wells Fargo filed a response to the Trustee's motion, arguing that "the Trustee has no standing" with respect to the Morrison Fee Order because the attorney's fee claim belongs to Morrison, not the bankruptcy estate. According to Wells Fargo, the assignment in the client engagement agreement does "not comport with the reality of prevailing party attorney's fees." Wells Fargo further argues in its response that the "prospective award" of attorney's fees is not "property of the estate" because it "is merely a contingent right that does not rise to the level of protected property interest under the Bankruptcy Code's estate property and automatic stay provisions … only if [Morrison] had actually been awarded attorney's fees … would the Trustee have a legitimate claim to recovery[.]"

39.     The Trustee seeks a declaratory judgment that the claim for attorney's fees in the

Morrison Action is property of the Debtor's estate, and that the Morrison Fee Order was entered in violation of the automatic stay and therefore is void.

40.     Additionally, the Court should determine that any claim to attorney's fees against any of the Foreclosure Plaintiffs in a Stopa case is property of the bankruptcy estate.

41.     There is a bona fide, actual, present, and practical need for this declaratory judgment. The estate will be denied substantial funds unless this Court determines that attorney's fee claims against the Foreclosure Plaintiffs in Stopa cases, including the claim in the Morrison Action, are property of the estate. This Court has exclusive jurisdiction to determine whether these claims are property of the estate.

42.     The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists concerning the estate's interest in the claim to attorney's fees against Wells Fargo in the Morrison Action, and concerning the estate's interest in similar claims against the other Foreclosure Plaintiffs in other Stopa cases. A determination that these claims are property of the estate is necessary to bring substantial property into the estate for the benefit of the estate's unsecured creditors.

43.      The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that the attorney's fee claim in the Morrison Action is property of the estate, and that similar claims in other Stopa cases are property of the estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) the claim to attorney's fees in the Morrison Action is property of the Debtor's bankruptcy estate, and that

the Morrison Fee Order is void and of no effect; (ii) any claim to attorney's fees against any of the Foreclosure Plaintiffs in a Stopa case is property of the Debtor's bankruptcy estate; (iii) awarding such further relief as the Court deems just.

**COUNT II – DECLARATORY RELIEF**
**(Dispute over fees involving U.S. Bank and the Buckmasters)**

44.     The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 1 through 24, above, as though fully set forth herein.

45.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq., seeking a determination that a claim to attorney's fees in a Stopa case is property of the Debtor's bankruptcy estate.

46.     Defendant James F. Buckmaster is an individual residing in Sarasota County, Florida and is sui juris.

47.     Defendant Dede M. Buckmaster is an individual residing in Sarasota County, Florida and is sui juris.

48.     On or around February 27, 2016, U.S. Bank, as Trustee for Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates Series 2007-4, filed a residential foreclosure complaint against James F. Buckmaster and Dede M. Buckmaster (together, the "**Buckmasters**") in North Port, Florida.  The action is pending in the Circuit Court of Sarasota County, Florida bearing Case No. 2016-CA-000983 (the "**Buckmaster Action**").

49.     For nearly three years, beginning in March 2016, Stopa and the Stopa Law Firm defended the Buckmaster Action for the Buckmasters.

50.     On October 2, 2018, Stopa, Mockler, and other attorneys employed by the Stopa law firm (Blake Fredrickson, Esq. and Christopher Hixson, Esq.) were withdrawn as counsel of record for the Buckmasters by an apparent sua sponte order.

51.     On or around November 13, 2018, the Court in the Buckmaster Action entered an order scheduling a case management conference for November 30, 2018. On November 30, 2018, the Court entered an order of dismissal without prejudice because no one appeared at the hearing (the "**Buckmaster Order**").

52.     On December 10, 2018, U.S. Bank moved to vacate the Buckmaster Order.

53.     On December 19, 2018, Nick Fowler, Esq. of the law firm Stamatakis + Thalji + Bonanno appeared on behalf of the Buckmasters.

54.     On January 9, 2019, the Trustee filed a motion to intervene in the Buckmaster Action for the limited purposes of pursuing an award of attorney's fees and costs on behalf of the estate, and opposing U.S. Bank's motion to vacate the Buckmaster Order.

55.     On January 25, 2019, U.S. Bank filed its reply to the Trustee's response, arguing that the Trustee does not have standing to participate in the Buckmaster Action.

56.     On February 8, 2019, the Court in the Buckmaster Action entered an order continuing U.S. Bank's motion to vacate the Buckmaster Order "until such a time that Plaintiff convinces or otherwise shows this Court that it has jurisdiction to grant the relief sought in the Motion, notwithstanding the automatic bankruptcy stay imposed by 11 U.S.C. § 362 relating to the Bankruptcy Case, or obtains relief from the automatic stay from the Bankruptcy Court."

57.     The Trustee seeks a declaratory judgment that the claim to attorney's fees against U.S. Bank in the Buckmaster Action is property of the Debtor's estate, and that the Trustee therefore has standing to defend U.S. Bank's attempt to vacate the Buckmaster Order.

58.     Additionally, the Court should determine that any claim to attorney's fees against any of the Foreclosure Plaintiffs in a Stopa case is property of the bankruptcy estate.

59.     There is a bona fide, actual, present, and practical need for this declaratory

judgment. The estate will be denied substantial funds unless this Court determines that attorney's fee claims against the Foreclosure Plaintiffs in Stopa cases, including the claim in the Buckmaster Action, are property of the estate. This Court has exclusive jurisdiction to determine whether these claims are property of the estate.

60.    The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists concerning the estate's interest in the claim to attorney's fees against U.S. Bank in the Buckmaster Action, and concerning the estate's interest in similar claims against the other Foreclosure Plaintiffs in other Stopa cases. A determination that these claims are property of the estate is necessary to bring substantial property into the estate for the benefit of the estate's unsecured creditors.

61.    The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that the attorney's fee claim in the Buckmaster Action is property of the estate, and that similar claims in other Stopa cases are property of the estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) the claim to attorney's fees in the Buckmaster Action is property of the Debtor's bankruptcy estate, and the Trustee has standing to defend the dismissal of the Buckmaster Order and prosecute the claim against U.S. Bank on the estate's behalf; (ii) any claim to attorney's fees against any of the Foreclosure Plaintiffs in a Stopa case is property of the Debtor's bankruptcy estate; (iii) awarding such further relief as the Court deems just.

## COUNT III – DECLARATORY RELIEF
### (Dispute over fees involving FNMA and Jennifer Nix)

62.     The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 1 through 24, above, as though fully set forth herein.

63.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq., seeking a determination that a claim to attorney's fees in a Stopa case is property of the Debtor's bankruptcy estate.

64.     Defendant Jennifer Nix ("**Nix**") is an individual residing in Hernando County, Florida and is sui juris.

65.     On or around August 21, 2014, FNMA's predecessor in interest, Ocwen Loan Servicing, LLC, filed its complaint for foreclosure against Nix with respect to real property located in Brooksville, Florida. The action is currently pending in the Circuit Court of Hernando County, Florida bearing Case No. 2014-CA-001296 (the "**Nix Action**").

66.     On August 25, 2017, FNMA obtained a final judgment of foreclosure against Nix. On September 15, 2017, Nix, through Stopa, appealed the judgment to the Florida Fifth District Court of Appeal, initiating Case No. 5D17-2995 (the "**Nix Appeal**").

67.     On August 27, 2018, Stopa filed his motion to withdraw as counsel of record in the Nix Appeal, after being suspended from the practice of law. On the same day, Mockler filed his notice of appearance for Nix in the Nix Appeal.

68.     On September 7, 2018, FNMA filed a confession of error in the Nix Appeal, and agreed to vacate the final judgment against Nix.

69.     On October 5, 2018, shortly after the Petition Date, the Court in the Nix Appeal granted Nix's motion for attorney's fees, and remanded the action to the circuit court. On the same day, October 5, 2018, Nix filed a motion in the circuit court to tax reasonable attorney's

fees incurred in the Nix Appeal.

70.     The Trustee seeks a declaratory judgment that the claims to attorney's fees in the Nix Action and Nix Appeal are property of the Debtor's estate.

71.     Additionally, the Court should determine that any claim to attorney's fees against any of the Foreclosure Plaintiffs in a Stopa case is property of the bankruptcy estate.

72.     There is a bona fide, actual, present, and practical need for this declaratory judgment. The estate will be denied substantial funds unless this Court determines that attorney's fee claims against the Foreclosure Plaintiffs in Stopa cases, including the claim in the Nix Action and Nix Appeal, are property of the estate. This Court has exclusive jurisdiction to determine whether these claims are property of the estate.

73.     The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists concerning the estate's interest in the claim to attorney's fees against FNMA in the Nix Action and Nix Appeal, and concerning the estate's interest in similar claims against the other Foreclosure Plaintiffs in other Stopa cases. A determination that these claims are property of the estate is necessary to bring substantial property into the estate for the benefit of the estate's unsecured creditors.

74.     The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that the attorney's fee claim in the Nix Action is property of the estate, and that similar claims in other Stopa cases are property of the estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) the claim to attorney's fees in the Nix Action is property of the Debtor's bankruptcy estate; (ii) any claim to attorney's fees against any of the Foreclosure Plaintiffs in a Stopa case is property of the Debtor's bankruptcy estate; (iii) awarding such further relief as the Court deems just.

### COUNT IV – DECLARATORY RELIEF
### (Dispute over settlement proceeds involving MTGLQ and Carol A. Kay)

75.     The Trustee repeats and re-alleges the allegations in paragraphs 1 through 24, above, as though fully set forth herein.

76.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq., seeking a determination that settlement proceeds assigned to the Debtor in its client engagement agreement are property of the Debtor's bankruptcy estate.

77.     Defendant Carol A. Kay ("**Kay**") is an individual residing in Hillsborough County, Florida and is sui juris.

78.     On or around February 23, 2012, MTGLQ's predecessor in interest, FNMA,[2] filed a residential foreclosure complaint against Kay concerning real property in Tampa, Florida. The action is pending in the Circuit Court of Hillsborough County, Florida bearing Case No. 2012-CA-002899 (the "**Kay Action**").

79.     For more than six years, beginning in March 2012, Stopa and the Stopa Law Firm defended the Kay Action on Kay's behalf.

80.     On October 5, 2018, Stopa, after being suspended from the practice of law, filed his motion to withdraw as counsel of record for Kay.

81.     On November 28, 2018, Michael Ziegler, Esq. appeared for Kay in the Kay Action.  On or around January 10, 2019, the trial court entered an order granting Stopa's motion

---

[2] On or around February 6, 2018, MTGLQ was substituted as party plaintiff in the Kay Action.

to withdraw as counsel and recognizing Mr. Ziegler as Kay's new counsel.

82.    On or around January 31, 2019, Kay, *pro se*, entered into a Joint Stipulation of Consent to In-Rem Final Judgment, in which Kay agreed to accept $5,000 from MTGLQ in exchange for execution of a consent final judgment, known as a "cash for keys" deal (the "**Kay Settlement**").

83.    On February 11, 2019, Kay, through counsel, filed in this Court a Motion to Determine Compromise of Third Party is Non-Estate Property seeking "to establish the settlement proceeds [are] non-estate property" (Main Case Doc. 252).

84.    The Trustee seeks a declaratory judgment that the proceeds of the settlement of the Kay Action are property of the Debtor's bankruptcy estate.

85.    Additionally, the Court should determine that any proceeds, cash, or funds stemming from an enforceable settlement of a Stopa case, whether the funds are in the hands of a Stopa client or one of the Foreclosure Plaintiffs, are property of the Debtor's bankruptcy estate.

86.    There is a bona fide, actual, present, and practical need for this declaratory judgment. The bankruptcy estate will be denied substantial funds unless this Court determines that any proceeds, cash, or funds that any of the Foreclosure Plaintiffs is obligated to pay in settlement of a Stopa case, including the funds that MTGLQ is required to pay in connection with the settlement of the Kay Action, are property of the estate. This Court has exclusive jurisdiction to determine whether these assets are property of the estate.

87.    The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists as to the estate's interest in the settlement proceeds that MTGLQ is

obligated to pay in the Kay Action, and that other Foreclosure Plaintiffs have paid or are obligated to pay in settlement of other Stopa cases. A determination that these funds are property of the estate is necessary to bring substantial property into the estate for the benefit of the estate's unsecured creditors.

88.     The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that the settlement proceeds at issue in the Kay Action, and at issue in similar circumstances in other Stopa cases, are property of the Debtor's bankruptcy estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) all proceeds, cash, or funds which any of the Foreclosure Plaintiffs has paid, or is obligated to pay, in settlement of a Stopa case are of the bankruptcy estate; (ii) the proceeds of the Kay Settlement are property of the estate; and (iii) awarding such further relief as the Court deems just.

### COUNT V – TURNOVER
**(Seeking proceeds of the Kay Settlement)**

89.     The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 75 through 88, above, as though fully set forth herein.

90.     This is an action for turnover of property of the estate pursuant to Section 542 of the Bankruptcy Code.

91.     The proceeds of the cash for keys agreement that resolved the Kay Action constitutes property of the estate to be recovered and administered by the Trustee pursuant to Section 541 of the Bankruptcy Code.

92.     Under Section 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover of the proceeds of the cash for keys settlement in the Kay Action which amount totals approximately $5,000.

**WHEREFORE**, the Trustee seeks a judgment against MTGLQ and Kay: (i) for the value of the "cash for keys" at issue in the Kay Action; (ii) compelling the turnover to the Trustee of the proceeds, cash, or funds that MTGLQ is obligated to pay under the Kay Settlement; and (iii) awarding such further relief as the Court deems just.

### COUNT VI – DECLARATORY RELIEF
**(Dispute over settlement proceeds involving CitiMortgage and Joshua A. Crithfield)**

93.     The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 1 through 24, above, as though fully set forth herein.

94.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq., seeking a determination that settlement proceeds assigned to the Debtor in its client engagement agreement are property of the Debtor's bankruptcy estate.

95.     Defendant Joshua A. Crithfield ("**Crithfield**") is an individual residing in Hillsborough County, Florida and is sui juris.

96.     On or around May 8, 2015, CitiMortgage filed a residential foreclosure complaint against Crithfield in Tampa, Florida. The action is pending in the Circuit Court of Hillsborough County, Florida bearing Case No. 2015-CA-004216 (the "**Crithfield Action**").

97.     For nearly two and a half years, beginning in July 2015, the Stopa Law Firm defended the Crithfield Action on behalf of Crithfield in the trial court.

98.     On November 30, 2017, CitiMortgage obtained a uniform final judgment of foreclosure against Crithfield. On December 29, 2017, Crithfield, through Stopa, appealed the judgment to the Florida Second District Court of Appeal, initiating Case No. 2D18-0058 (the "**Crithfield Appeal**").

99.     On August 16, 2018, Stopa withdrew as counsel in the Crithfield Appeal. Thereafter, Mockler and another attorney formerly employed by the Debtor, Latasha Scott, Esq.,

continued to represent Crithfield in the Crithfield Appeal.

100.    The Debtor remained counsel of record in the Crithfield Appeal for nearly a year, until Mockler and Ms. Scott withdrew on September 27, 2018. Thus, between trial and appellate court proceedings, the Debtor defended CitiMortgage's foreclosure action on behalf of Crithfield for nearly three and a half years.

101.    Prior to the Petition Date, in July and August 2018, Ms. Scott, as an employee of the Debtor, negotiated for Crithfield a cash for keys settlement with CitiMortgage, which included a payment from CitiMortgage of $6,000 (the "**Crithfield Settlement**"). On the Petition Date, October 2, 2018, CitiMortgage executed the settlement agreement. On October 9, 2018, after the Petition Date, CitiMortgage disbursed the first of two settlement payments to Crithfield.

102.    On October 18, 2018, the Trustee filed a notice of filing in the Crithfield Appeal, informing the court and parties of the Debtor's bankruptcy case and the extended stay imposed by this Court under 11 U.S.C. §§ 362 and 105(a).[3]

103.    On November 16, 2018, the Trustee filed another status report in the Crithfield Appeal, advising that this Court's extended stay had expired but that the automatic stay remained in effect. The Trustee further advised that the estate asserted an interest in any funds paid to any Stopa client in settlement of a Stopa case, and that payment of such funds to a person other than the Trustee would be considered a violation of the automatic stay.

104.    On or around January 11, 2019, CitiMortgage and Crithfield, *pro se*, filed a Stipulated Dismissal of Appeal, apparently based on the Crithfield Settlement. The Trustee filed a response to the Stipulated Dismissal of Appeal reiterating that any settlement proceeds, cash, or funds paid to a Stopa client was property of the estate.

105.    On February 6, 2019, U.S. Bank filed its reply to the Trustee's response, revealing

---

[3] See Main Case Docs. 12, 32, 139.

for the first time to the Trustee that CitiMortgage had executed the Crithfield Settlement agreement on the Petition Date and partially funded the settlement after the Petition Date.

106.    The Trustee seeks a declaratory judgment that the proceeds of the Crithfield Settlement are property of the Debtor's bankruptcy estate.

107.    Additionally, the Court should determine that any proceeds, cash, or funds stemming from an enforceable settlement of a Stopa case, whether the funds are in the hands of a Stopa client or one of the Foreclosure Plaintiffs, are property of the Debtor's bankruptcy estate. The Court should further determine that that any act to obtain possession of such settlement proceeds, or to exercise control over such settlement proceeds, constitutes a violation of the automatic stay imposed by Section 362(a) of the Bankruptcy Code.

108.    There is a bona fide, actual, present, and practical need for this declaratory judgment. The bankruptcy estate will be denied substantial funds unless this Court determines that any proceeds, cash, or funds that any of the Foreclosure Plaintiffs is obligated to pay in settlement of a Stopa case, including the funds that CitiMortgage has paid and is required to pay in connection with the Crithfield Settlement, are property of the estate. This Court has exclusive jurisdiction to determine whether these assets are property of the estate.

109.    The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists as to the estate's interest in the settlement proceeds that CitiMortgage has paid and is obligated to pay under the Crithfield Settlement, and that other Foreclosure Plaintiffs have paid or are obligated to pay in settlement of other Stopa cases. A determination that these funds are property of the estate is necessary to bring substantial property

into the estate for the benefit of the estate's unsecured creditors.

110.   The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that the proceeds of the Crithfield Settlement, and settlement proceeds at issue in similar circumstances in other Stopa cases, are property of the Debtor's bankruptcy estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) all proceeds, cash, or funds which any of the Foreclosure Plaintiffs has paid, or is obligated to pay, in settlement of a Stopa case are of the bankruptcy estate; (ii) any act to obtain possession of such settlement proceeds, or to exercise control over such settlement proceeds, constitutes a violation of the automatic stay imposed by Section 362(a) of the Bankruptcy Code; (iii) the proceeds of the Crithfield Settlement are property of the estate; and (iv) awarding such further relief as the Court deems just.

### COUNT VII – TURNOVER
#### (Seeking proceeds of the Crithfield Settlement)

111.   The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 93 through 110, above, as though fully set forth herein.

112.   This is an action for turnover of property of the estate pursuant to Section 542 of the Bankruptcy Code.

113.   The proceeds of the Crithfield Settlement constitute property of the estate to be recovered and administered by the Trustee pursuant to Section 541 of the Bankruptcy Code.

114.   Under Section 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover of the proceeds, cash, or funds that CitiMortgage has paid or is obligated to pay under the Crithfield Settlement.

**WHEREFORE**, the Trustee seeks a judgment against CitiMortgage and Crithfield: (i)

for the value of the proceeds, cash, or funds paid under the Crithfield Settlement; (ii) compelling the turnover to the Trustee of such proceeds, cash, or funds; and (iii) awarding such further relief as the Court deems just.

### COUNT VIII – AVOIDANCE OF POST-PETITION TRANSFER
### (Seeking proceeds of the Crithfield Settlement)

115.    The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 93 through 110, above, as though fully set forth herein.

116.    This is an action under Sections 549 and 550 of the Bankruptcy Code to recover property of the estate transferred after the Petition Date.

117.    The proceeds of the Crithfield Settlement constitute property of the estate to be recovered and administered by the Trustee pursuant to Section 541 of the Bankruptcy Code.

118.    Under Section 549 of the Bankruptcy Code, the post-petition transfer of Crithfield Settlement proceeds is void and, alternatively, avoidable by the Trustee.

119.    Under Section 550 of the Bankruptcy Code, the Trustee is entitled to recover the transferred Crithfield Settlement Proceeds from Crithfield, who is the transferee of such transfer.

**WHEREFORE**, the Trustee seeks a judgment against Crithfield: (i) determining that the transfer to Crithfield of the Crithfield Settlement proceeds is void, and alternatively avoiding the transfer; (ii) ordering Crithfield to deliver the transferred Crithfield Settlement proceeds to the Trustee, or alternatively, entering judgment against Crithfield for the value of the transfer; and (iii) awarding such further relief as the Court deems just.

### COUNT IX – DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY
### (Against CitiMortgage and Crithfield)

120.    The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 93 through 110, above, as though fully set forth herein.

121.    This is an action under Sections 362(k) and 105(a) of the Bankruptcy Code to recover damages stemming from violations of the automatic stay imposed by Section 362(a) of the Bankruptcy Code.

122.    The proceeds of the Crithfield Settlement constitute property of the estate, and therefore the conduct of Crithfield and CitiMortgage alleged hereinabove constitute violations of the automatic stay.

123.    Under Sections 362(k) and 105(a) of the Bankruptcy Code, the Trustee is entitled to an award of damages incurred in connection with violations of the automatic stay, including without limitation an award of attorney's fees and costs incurred in connection with the Trustee's efforts to remedy the stay violations through this adversary proceeding.

**WHEREFORE**, the Trustee seeks judgment against CitiMortgage and Crithfield: (i) for the damages incurred in connection with their violations of the automatic stay, including an award of the Trustee's attorney's fees and cost incurred in connection with this adversary proceeding; and (ii) awarding such further relief as the Court deems just.

### COUNT X – DECLARATORY RELIEF
### (Dispute over fees involving Bank of America and Cameron Foster)

124.    The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 1 through 24, above, as though fully set forth herein.

125.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq., seeking a determination that the estate has an interest in a claim to attorney's fees in an appeal in which the Debtor prevailed in the trial court.

126.    Defendant Cameron Foster ("**Foster**") is an individual residing in Pasco County, Florida and is sui juris.

127.    On or around June 27, 2014, Bank of America filed a residential foreclosure

complaint against Foster in Pasco County, Florida. The action is pending in the Circuit Court for

Pasco County, Florida bearing Case No. 2014-CA-2387 (the "**Foster Action**").

128.    Beginning in December 2014, the Stopa Law Firm defended the Foster Action on

behalf of Foster in the trial court.

129.    On May 12, 2015 the Court in the Foster Action entered the Order on Motion to

Dismiss Summary Judgment ("**Foster Order**"), giving rise to a claim to attorney's fees against

Bank of America under the loan documents and applicable Florida law, and otherwise.  Bank of

America appealed the Foster Order to the Florida Second District Court of Appeal, initiating

Case No. 2D18-1910. The appeal is currently pending.

130.    On January 16, 2019, Bank of America filed in this Court a motion seeking a

determination that "a claim to any attorney's fees that may be awarded against [Bank of

America] to the Debtor's clients in any of the [Stopa cases is] not property of the estate" because

those claims belong to the Debtor's clients only, and Bank of America requested global relief

from the automatic stay based on the requested determination (Main Case Doc. 217).

131.    The Trustee seeks a declaratory judgment that any claim to attorney's fees against

Bank of America stemming from the Debtor's successful defense of the Foster Action is property

of the Debtor's bankruptcy estate.

132.    Additionally, the Court should determine that any claim to attorney's fees against

any of the Foreclosure Plaintiffs stemming from the Debtor's successful defense of a Stopa case

in trial court is property of the Debtor's bankruptcy estate.

133.    There is a bona fide, actual, present, and practical need for this declaratory

judgment. The bankruptcy estate will be denied substantial funds unless this Court determines

that the estate has an interest in attorney's fee claims against Foreclosure Plaintiffs stemming

from the Debtor's successful defense of a Stopa case at trial, including the fee claim stemming from the Debtor's successful defense of the Foster Action. This Court has exclusive jurisdiction to determine whether these claims constitute property of the estate.

134.    The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists as to the estate's interest in the claim to attorney's fees against Bank of America stemming from the successful defense in trial court of the Foster Action, and as to the estate's interest in other similar claims against other Foreclosure Plaintiffs in other Stopa cases. A determination that these claims are property of the estate is necessary to bring substantial property into the estate for the benefit of the estate's unsecured creditors.

135.    The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that claim to attorney's fees against Bank of America stemming from the Foster Action, and similar claims against other Foreclosure Plaintiffs in other Stopa cases, are property of the Debtor's bankruptcy estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) the claim to attorney's fees in the Foster Action is property of the Debtor's bankruptcy estate; (ii) any claim to attorney's fees against any of the Foreclosure Plaintiffs in a Stopa case is property of the Debtor's bankruptcy estate; (iii) awarding such further relief as the Court deems just.

### COUNT XI – DECLARATORY RELIEF
### (Dispute over fees involving BNY Mellon and David Bowering)

136.    The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 1 through 24, above, as though fully set forth herein.

137.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq.,

seeking a determination that the estate has an interest in a claim to attorney's fees in an appeal in which the Debtor prevailed in the trial court.

138.    Defendant David Bowering ("**Bowering**") is an individual residing in Hillsborough County, Florida and is sui juris.

139.    On or around May 26, 2015, BNY Mellon filed a residential foreclosure complaint against Bowering in Hillsborough County, Florida. The action is pending in the Circuit Court for Hillsborough County, Florida bearing Case No. 15-CA-4841 (the "**Bowering Action**").

140.    For nearly three years, beginning in 2015, the Stopa Law Firm defended the Bowering Action on behalf of Bowering in trial court.

141.    On March 13, 2018, the court in the Bowering Action entered an Order Granting Involuntary Dismissal (the "**Bowering Order**"), giving rise to a claim to attorney's fees against BNY Mellon based on the underlying loan documents and applicable Florida law, and otherwise. BNY Mellon appealed the Bowering Order to the Florida Second District Court of Appeal, initiating Case No. 2D18-1846, which is pending.

142.    The Trustee seeks a declaratory judgment that any claim to attorney's fees against BNY Mellon stemming from the Debtor's successful defense of the Bowering Action is property of the Debtor's bankruptcy estate.

143.    Additionally, the Court should determine that any claim to attorney's fees against any of the Foreclosure Plaintiffs stemming from the Debtor's successful defense of a Stopa case is property of the Debtor's bankruptcy estate.

144.    There is a bona fide, actual, present, and practical need for this declaratory judgment. The bankruptcy estate will be denied substantial funds unless this Court determines

that the estate has an interest in attorney's fee claims against Foreclosure Plaintiffs stemming from the Debtor's successful defense of a Stopa case at trial, including the fee claim stemming from the Debtor's successful defense of the Bowering Action. This Court has exclusive jurisdiction to determine whether these claims constitute property of the estate.

145.    The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists as to the estate's interest in the claim to attorney's fees against BNY Mellon stemming from the successful defense in trial court of the Bowering Action, and as to the estate's interest in other similar claims against other Foreclosure Plaintiffs in other Stopa cases. A determination that these claims are property of the estate is necessary to bring substantial property into the estate for the benefit of the estate's unsecured creditors.

146.    The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that claim to attorney's fees against BNY Mellon stemming from the Bowering Action, and similar claims against other Foreclosure Plaintiffs in other Stopa cases, are property of the Debtor's bankruptcy estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) the claim to attorney's fees in the Bowering Action is property of the Debtor's bankruptcy estate; (ii) any claim to attorney's fees against any of the Foreclosure Plaintiffs in a Stopa case is property of the Debtor's bankruptcy estate; (iii) awarding such further relief as the Court deems just.

## COUNT XII – DECLARATORY RELIEF
### (Dispute over settlement proceeds involving Deutsche Bank and the Heberts)

147.    The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 1 through 24, above, as though fully set forth herein.

148.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq., seeking a determination that settlement proceeds assigned to the Debtor in its client engagement agreement are property of the Debtor's bankruptcy estate.

149.     Defendant Jason Hebert is an individual residing in Pinellas County, Florida and is sui juris.

150.     Defendant Sarah Hebert is an individual residing in Pinellas County, Florida and is sui juris.

151.     On or around August 13, 2014, Deutsche Bank filed a residential foreclosure complaint against Jason Hebert and Sarah Hebert (together, the "**Heberts**") in Pinellas County, Florida. The action is pending in the Circuit Court for Pinellas County, Florida bearing Case No. 2014-6092-CI (the "**Hebert Action**").

152.     For nearly four years, beginning in September 2014, the Stopa Law Firm defended the Hebert Action on behalf of the Heberts.

153.     On September 18, 2018, Stopa withdrew as counsel of record for the Heberts.

154.     On January 3, 2019, Deutsche Bank filed a motion in this Court seeking a determination from this Court as to whether it could directly distribute settlement funds to Stopa clients, including the Heberts, or whether such funds should be distributed to the Trustee on behalf of the estate based on the Debtor's client engagement agreements (Main Case Doc. 191).

155.     The Trustee seeks a declaratory judgment that any funds Deutsche Bank is obligated to pay under its settlement with the Heberts is property of the bankruptcy estate.

156.     Additionally, the Court should determine that any proceeds, cash, or funds stemming from an enforceable settlement of a Stopa case, whether the funds are in the hands of a Stopa client or one of the Foreclosure Plaintiffs, are property of the Debtor's bankruptcy estate.

157.    There is a bona fide, actual, present, and practical need for this declaratory judgment. The bankruptcy estate will be denied substantial funds unless this Court determines that any proceeds, cash, or funds that any of the Foreclosure Plaintiffs is obligated to pay in settlement of a Stopa case, including the funds that Deutsche Bank is required to pay in connection with the settlement of the Hebert Action, is property of the estate. This Court has exclusive jurisdiction to determine whether these assets are property of the estate.

158.    The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists as to the estate's interest in the settlement proceeds that Deutsche Bank is obligated to pay to settle the Hebert Action, and that other Foreclosure Plaintiffs have paid or are obligated to pay in settlement of other Stopa cases. A determination that these funds are property of the estate is necessary to bring substantial property into the estate for the benefit of the estate's unsecured creditors.

159.    The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that claim to attorney's fees against Deutsche Bank stemming from the Hebert Action, and similar claims against other Foreclosure Plaintiffs in other Stopa cases, are property of the Debtor's bankruptcy estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) all proceeds, cash, or funds which any of the Foreclosure Plaintiffs has paid, or is obligated to pay, in settlement of a Stopa case are of the bankruptcy estate; (ii) any funds that Deutsche Bank is obligated to pay in settlement of the Hebert Action are property of the estate; and (iii) awarding such further relief as the Court deems just.

## COUNT XIII – DECLARATORY RELIEF
### (Dispute over settlement proceeds involving HMC, BSI, and the Mizutanis)

160.    The Trustee repeats and re-alleges the allegations in paragraphs 1 through 24, above, as though fully set forth herein.

161.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, et seq., seeking a determination that settlement proceeds assigned to the Debtor in its client engagement agreement are property of the Debtor's bankruptcy estate.

162.    Defendant Toshiaki Mizutani is an individual residing in Pinellas County, Florida and is sui juris.

163.    Defendant Cleosida Mizutani is an individual residing in Pinellas County, Florida and is sui juris.

164.    On or around August 3, 2015, HMC's apparent predecessor-in-interest filed a residential foreclosure complaint against Toshiaki Mizutani and Cleosida Mizutani (together, the "**Mizutanis**") concerning real property in Pinellas Park, Florida.[4] The foreclosure complaint was verified by HMC's servicer, BSI, as "attorney in fact." The action is pending in the Circuit Court of Pinellas County, Florida bearing Case No. 15-005271-CI (the "**Mizutani Action**").

165.    Beginning in September 2015, Stopa and the Stopa Law Firm defended the Mizutani Action on the Mizutanis' behalf.

166.    On March 23, 2018, a Uniform Final Judgment of Foreclosure was entered in the Mizutani Action against the Mizutanis.

167.    On June 22, 2018, the Mizutanis, through the Debtor, filed the Notice of Appeal of the Uniform Final Judgment of Foreclosure in the Second District Court of Appeal, initiating Case No. 2D18-2561 (the "**Mizutani Appeal**").

---

[4] The foreclosure complaint against the Mizutanis was filed in the name of "Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, its Trustee."

168.     On September 24, 2018, Stopa, after being suspended from the practice of law, filed his motion to withdraw as counsel of record for the Mizutanis in the Mizutani Action.

169.     On October 18, 2018, in the Mizutani Appeal, the Trustee filed a Notice of Filing the Stay Extension Order, putting the parties to the Mizutani Appeal on notice of the Court's extended stay under 11 U.S.C. § 105.[5]

170.     On or around October 24, 2018, while the extended stay was in place, HMC, directly or through its agent BSI, entered into a "cash for keys" deal in which the Mizutanis agreed to the issuance of a certificate of title in favor of HMC and to vacate the subject property in exchange for payment of $4,000 from HMC (the "**Mizutani Settlement**"). This was done without notice to the Trustee and without leave of this Court.

171.     On October 30, 2018, while the extended stay remained in place, the Mizutanis, through new counsel, filed the Notice of Voluntary Dismissal in the Mizutani Appeal.

172.     On November 16, 2018, the Trustee filed a Status Report in the Mizutani Appeal stating that the automatic stay under Section 362 remained in effect.

173.     On February 7, 2019, the court in the Mizutani Appeal dismissed the appeal.

174.     On February 12, 2019, BSI, as servicing agent for HMC, filed in this Court a motion seeking, inter alia, "clarification that the § 362 stay is no longer in effect and for the entry of an Order granting relief from the automatic stay so as to allow it to immediately continue and complete its trial court Foreclosure Proceedings, and to allow the trial court to enter all necessary orders, judgments, and decrees associated therewith." (Main Case Doc. 254).

175.     The Trustee seeks a declaratory judgment that the proceeds of the Mizutani Settlement are property of the Debtor's bankruptcy estate.

176.     Additionally, the Court should determine that any proceeds, cash, or funds

---

[5] See Main Case Docs. 12, 32, 139.

stemming from an enforceable settlement of a Stopa case, whether the funds are in the hands of a Stopa client or one of the Foreclosure Plaintiffs, are property of the Debtor's bankruptcy estate.

177.    There is a bona fide, actual, present, and practical need for this declaratory judgment. The bankruptcy estate will be denied substantial funds unless this Court determines that any proceeds, cash, or funds that any of the Foreclosure Plaintiffs is obligated to pay in settlement of a Stopa case, including the funds that HMC and/or BSI paid or are required to pay in connection with the settlement of the Mizutani Appeal, are property of the estate. This Court has exclusive jurisdiction to determine whether these assets are property of the estate.

178.    The declaration requested deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, and is not sought merely as an advisory opinion, as legal advice, or to answer a question propounded from curiosity. A real, actual, justiciable controversy exists as to the estate's interest in the settlement proceeds that HMC and/or BSI paid or are obligated to pay under the Mizutani Settlement, and that other Foreclosure Plaintiffs have paid or are obligated to pay in settlement of other Stopa cases. A determination that these funds are property of the estate is necessary to bring substantial property into the estate for the benefit of the estate's unsecured creditors.

179.    The Court's issuance of declaratory relief in this case will settle the controversy between the parties and will serve a useful purpose in clarifying that the settlement proceeds at issue in the Mizutani Appeal, and at issue in similar circumstances in other Stopa cases, are property of the Debtor's bankruptcy estate.

**WHEREFORE**, the Trustee seeks a declaratory judgment, adjudging that: (i) all proceeds, cash, or funds which any of the Foreclosure Plaintiffs has paid, or is obligated to pay, in settlement of a Stopa case are of the bankruptcy estate; (ii) the proceeds of the Mizutani

Settlement are property of the estate; and (iii) awarding such further relief as the Court deems just.

## COUNT XIV – TURNOVER
### (Seeking proceeds of the Mizutani Settlement)

180.   The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 160 through 179, above, as though fully set forth herein.

181.   This is an action for turnover of property of the estate pursuant to Section 542 of the Bankruptcy Code.

182.   The proceeds of the Mizutani Settlement constitute property of the estate to be recovered and administered by the Trustee pursuant to Section 541 of the Bankruptcy Code.

183.   Under Section 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover of the proceeds, cash, or funds that HMC and/or BSI have paid or are obligated to pay under the Mizutani Settlement.

**WHEREFORE**, the Trustee seeks a judgment against HMC, BSI and the Mizutanis: (i) for the value of the proceeds, cash, or funds paid under the Mizutani Settlement; (ii) compelling the turnover to the Trustee of such proceeds, cash, or funds; and (iii) awarding such further relief as the Court deems just.

## COUNT XV – AVOIDANCE OF POST-PETITION TRANSFER
### (Seeking proceeds of the Mizutani Settlement)

184.   The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 160 through 179, above, as though fully set forth herein.

185.   This is an action under Sections 549 and 550 of the Bankruptcy Code to recover property of the estate transferred after the Petition Date.

186.   The proceeds of the Mizutani Settlement constitute property of the estate to be

recovered and administered by the Trustee pursuant to Section 541 of the Bankruptcy Code.

187.    Under Section 549 of the Bankruptcy Code, the post-petition transfer of Mizutani Settlement proceeds is void and, alternatively, avoidable by the Trustee.

188.    Under Section 550 of the Bankruptcy Code, the Trustee is entitled to recover the transferred Mizutani Settlement proceeds from the Mizutanis, who are the transferees of such transfer.

**WHEREFORE**, the Trustee seeks a judgment against the Mizutanis: (i) determining that the transfer to the Mizutanis of the Mizutani Settlement proceeds is void, and alternatively avoiding the transfer; (ii) ordering the Mizutanis to deliver the transferred Mizutani Settlement proceeds to the Trustee, or alternatively, entering judgment against Mizutani for the value of the transfer; and (iii) awarding such further relief as the Court deems just.

## COUNT XVI – DAMAGES FOR VIOLATION OF THE STAY
### (Against HMC, BSI, and the Mizutanis)

189.    The Trustee repeats and re-alleges each and every allegation set forth in paragraphs 160 through 179, above, as though fully set forth herein.

190.    This is an action under Sections 362(k) and 105(a) of the Bankruptcy Code to recover damages stemming from violations of the automatic stay imposed by Section 362(a) of the Bankruptcy Code as well as the extended stay that this Court imposed under Section 105(a) of the Bankruptcy Code.

191.    The proceeds of the Mizutani Settlement constitute property of the estate, and therefore the conduct of the Mizutanis, HMC, and BSI alleged hereinabove constitute violations of the automatic stay, as well as this Court's extended stay.

192.    Under Sections 362(k) and 105(a) of the Bankruptcy Code, the Trustee is entitled to an award of damages incurred in connection with violations of the automatic stay, including

without limitation an award of attorney's fees and costs incurred in connection with the Trustee's efforts to remedy the stay violations through this adversary proceeding.

193.     In addition, this Court has authority under Section 105(a) of the Bankruptcy Code, and also has inherent authority, to remedy violations of its orders, including the Court's order extending the automatic stay.

**WHEREFORE**, the Trustee seeks judgment against HMC, BSI, and the Mizutanis: (i) for the damages incurred in connection with their violations of the Court's extended stay as well as the automatic stay, including an award of the Trustee's attorney's fees and cost incurred in connection with this adversary proceeding; and (ii) awarding such further relief as the Court deems just.

## RESERVATION OF RIGHTS

The Trustee reserves the right to amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief as may be warranted under the circumstances.

DATED this 15th day of March 2019.

Respectfully submitted,

GENOVESE JOBLOVE & BATTISTA, P.A.
*General Counsel to Stephen L. Meininger,*
*as Chapter 7 Trustee*
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Telephone: (813) 439.3100
Telecopier: (813) 439.3153

By:   */s/ Michael A. Friedman*
       Michael A. Friedman, Esq. (FBN 71828)
       E-Mail: mfriedman@gjb-law.com
       Lisa M. Castellano, Esq. (FBN 748447)
       E-Mail: lcastellano@gjb-law.com
       Eric D. Jacobs, Esq. (FBN 85992)
       E-Mail: ejacobs@gjb-law.com