UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

STAY IN MY HOME, P.A.
fka STOPA LAW FIRM, P.A.                                Case No. 8:18-bk-08436-RCT

    Debtor.
_____/

STEPHEN L. MEININGER, as Chapter 7 Trustee,
Trustee of the bankruptcy estate of STAY IN MY
HOME, P.A. *fka* STOPA LAW FIRM, P.A.

    Plaintiff,                                          Adv. Pro. No. 8-19-ap-00127-RCT

v.

WELLS FARGO BANK, N.A.;
U.S. BANK, N.A.; CITIMORTGAGE,
INC.; FEDERAL NATIONAL
MORTGAGE ASSOCIATION; BANK OF
AMERICA, N.A.; THE BANK OF NEW
YORK MELLON; DEUTSCHE BANK
NATIONAL TRUST COMPANY; MTGLQ
INVESTORS, L.P.; BSI FINANCIAL
SERVICES, INC.; HMC ASSETS, LLC;
PRINCE MORRISON; JAMES F.
BUCKMASTER; DEDE M.
BUCKMASTER; JENNIFER NIX; CAROL
A. KAY; JOSHUA A. CRITHFIELD;
CAMERON FOSTER; DAVID
BOWERING; JASON HEBERT; SARAH
HEBERT; TOSHIAKI MIZUTANI; and
CLEOSIDA MIZUTANI,

    Defendants.
_____/

**TRUSTEE'S OMNIBUS RESPONSE TO MOTIONS TO DISMISS**
**(Docs. 31, 34, 36, 47, 48, 55)**

1

STEPHEN L. MEININGER (the "Trustee"), as Chapter 7 Trustee of the bankruptcy estate of STAY IN MY HOME, P.A. *fka* STOPA LAW FIRM, P.A. (the "Debtor"), through undersigned counsel, submits this Omnibus Response (the "Response") to the motions to dismiss filed with respect to the Trustee's Complaint for Declaratory and Related Relief (the "Complaint"). The motions to dismiss are at Docs. 31, 34, 36, 47, 48, and 55.

## Overview

1. The Debtor was a law firm specializing in residential mortgage foreclosure defense and related appellate work before filing a voluntary Chapter 7 petition in this Court on October 2, 2018 (the "Petition Date"), initiating this bankruptcy case. ¶¶14, 16.[1]

2. The Debtor's standard engagement agreement states that prevailing party fees and "any payment by the bank" belong to the Debtor:

> In the event we recover monies through the process of defending this lawsuit, be it via entry of a judgment for fees or any payment by the bank then such funds shall belong to the Firm. You agree that because the Firm charges such a low annual fee that any monies recovered shall belong to the firm.

3. According to the Debtor's president as of the Petition Date, Richard Mockler, Esq., these assignments were part of the Debtor's business model: almost all clients signed an engagement agreement with a provision assigning fees and settlement monies to the Debtor, clients agreed to them because the Debtor charged only a modest annual fee for its services, and the Debtor frequently represented non-paying clients anticipating that it would recover funds upon the borrowing prevailing or reaching a settlement. ¶¶20-21. The standard engagement agreement is **Exhibit A** to the Complaint.

4. Mockler became the Debtor's president on July 30, 2018, when the Debtor's former president, Mark P. Stopa, Esq. sold his 100% interest in the firm to Mockler. This was

---

[1] References to "¶___" are to the numbered paragraphs of the Complaint.

2

done shortly after the Florida Supreme Court suspended Stopa from the practice of law on July 27, 2018. ¶¶17-18. The Debtor (through Mockler and other attorneys employed by the Debtor) continued to serve as counsel of record in numerous cases after Stopa was suspended by the Florida Supreme Court (indeed, that was the point of selling the firm).

5. On the Petition Date, the Debtor, Mockler, and other attorneys then-employed by the Debtor were counsel of record for clients ("Stopa clients") in thousands of cases pending in various stages of litigation in courts across the State of Florida (the "Stopa cases"). ¶¶19, 22. Many, if not most, of these cases involve one of the lenders named as a defendant in this adversary proceeding (often in a representative or trustee capacity).[2] ¶22.

6. Based on the assignments in the Debtor's client engagement agreements, the Trustee, on behalf of the estate, has asserted an interest in (a) any claim to prevailing party attorney's fees that arose pre-petition from the Debtor's successful defense of a Stopa case, but was not collected as of the Petition Date (b) any such claims that arise post-petition in a Stopa case as a result of the Debtor's pre-petition efforts, (c) any settlement funds that any of the Foreclosure Plaintiffs was obligated to pay as of the Petition Date, or becomes obligated to pay post-petition in settlement of a Stopa case as a result of the Debtor's efforts. ¶23.

7. To date, the Trustee has asserted the estate's interest in these matters ad hoc, in response to motions filed by Foreclosure Plaintiffs seeking determinations that the automatic stay does not prevent them from pursuing state court foreclosure cases against Stopa clients, or in state court cases in which a fee claim has arisen or a settlement has occurred. This has required the Trustee to re-argue innumerable times the same common legal issues concerning the estate's interest in these matters, sometimes raised by different counsel in different cases on behalf of the

---

[2] There are additional financial institutions making up the majority of the Foreclosure Plaintiffs that may, in the future, be named as defendants in this or a future adversary proceeding.

3

same Foreclosure Plaintiff.

8. The Trustee filed this adversary proceeding in accordance with Fed. R. Bankr. P. 7001(2) and (9) to obtain a declaratory judgment concerning the common legal issues that have arisen with respect to the extent and validity of the estate's interest in fee claims and settlements stemming from Stopa cases.

## The Motions to Dismiss

9. In response to the Complaint, five motions to dismiss were filed by four Foreclosure Plaintiffs, and one by an individual Stopa client.[3] By and large, these motions raise common legal arguments. Indeed, each defendant argues that there is no justiciable controversy presented by the adversary complaint to support the requested declaratory judgment—and then goes on to argue that the Court should determine that the estate has no interest in the fee claims and settlements at issue. The extent of the estate's interest in these matters is the precise legal issue about which the Trustee seeks a declaratory judgment. The Trustee addresses this common issue below, followed by his response to the extent certain defendant's discrete motion presents an argument unique to that defendant.

## Memorandum of Law

**A. This Court has exclusive jurisdiction to determine the extent of the estate's interest in the fee claims and settlements at issue, presenting judiciable issues that are properly the subject of a declaratory judgment.**

10. The Debtor's interests in fee claims and settlement proceeds assigned to it under its client engagement agreements are property of the estate under Section 541(a)(1) of the Bankruptcy Code, which defines "property of the estate" to include "all legal or equitable

---

[3] As to Count I: Wells Fargo Bank, N.A., on behalf of Registered Holders of Bear Stearns Asset Backed Securities I Trust 2007-AC4, Asset-Backed Certificates, Series 2007-AC4 (Doc. 47); Wells Fargo Bank, N.A. (Doc. 48). As to Count II: U.S. Bank, N.A. (Doc. 55). As to Count XI: Bank of New York Mellon (Doc. 36). As to Count XII: Deutsche Bank National Trust Company (Doc. 31); Jason and Sarah Hebert (Doc. 34).

4

interest of the debtor in property as of the commencement of the case." "The breadth of the interests captured by § 541's concept of property of the estate cannot be overstated." *In re Herman*, 495 B.R. 555, 583 (Bankr. S.D. Fla. 2013) (inchoate claim to bonus on account of attorney's fees received from cases debtor originated pre-petition, but which were finally resolved and paid post-petition, was property of estate). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Johnson*, 548 B.R. 770, 790 (Bankr. S.D. Ohio 2016).

11. In *Herman*, the bankruptcy court discussed the breadth of the term "property of the estate" at length, explaining:

> In construing the meaning of the term "property" as included in a debtor's bankruptcy estate, the Supreme Court and courts throughout the country have repeatedly held that property of the estate includes a debtor's contingent interests in property. In fact, a contingency is no bar to a property interest becoming property of the bankruptcy estate, <u>even if such contingency requires additional postpetition services, and even if the right to enjoyment of the property may be defeated.</u> Interests that are speculative are even included within § 541's expansive definition of property of the estate. An interest conditioned on continued employment does not exclude it from becoming property of the estate.
>
> Although numerous factors are applied in making any such determination, <u>the central and repeated question raised in those decisions is whether the postpetition payment is sufficiently grounded in the debtor's prepetition services and rights to qualify as estate property.</u>

*Id.* at 585 (emphases added, citations, alterations, brackets omitted).

12. Consistent with the foregoing analysis, the concept that a post-petition fee is property of the estate if it is grounded in the debtor's prepetition services recurs throughout cases involving bankrupt attorneys and law firms. *See, e.g., In re Bagen*, 186 B.R. 824, 828 (Bankr. S.D.N.Y. 1995), *aff'd*, 201 B.R. 642 (S.D.N.Y. 1996) ("portions of Bagen's contingent attorney's fees which may be paid postpetition, but were nevertheless earned and <u>rooted in his prepetition past</u>, should be includable in his bankruptcy estate," and "estate's interest in the

5

future payment includes the entire sum paid less the amount attributable to services rendered postpetition.") (emphasis added); *In re Paul A. Nelson, P.A.*, 203 B.R. 756 (Bankr. M.D. Fla. 1996) (analyzing referral fee agreement, explaining "value of the legal services as of the date of the petition is an asset of the estate ... if the contract was an executory contract at the time of conversion, the contract had value, the value is determined on a quantum meruit basis, and the value is property of the bankruptcy estate."); *Turner v. Avery*, 947 F.2d 772 (5th Cir. 1991) *cert. denied*, 112 S. Ct. 2966 (1992) ("contracts on cases subsequently settled or successfully litigated [after the petition date] did have a value on [the petition date,] determinable on a quantum meruit basis by measuring the value and worth of the legal services performed both before and after the bankruptcy filing," and trustee was entitled to share fees earned post-petition to the extent of "value of the legal services provided in each case prior to the date of the filing of the bankruptcy petition."); *Watts v. Williams*, 145 B.R. 56, 58 (S.D. Tex. 1993) (same); *cf. In re Alvarez*, 224 F.3d 1273, 1278 (11th Cir. 2000) (malpractice claim was estate property because it was "sufficiently rooted in [debtor's] pre-bankruptcy past;" "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.").

13. Based on the foregoing, the estate has an interest in all fee claims and settlements generated as a result of the Debtor's pre-petition efforts and that are otherwise "sufficiently rooted in the debtor's pre-bankruptcy past" to qualify as property of the estate. The precise location on the spectrum of pre-petition versus post-petition work that will render these matters property of the estate presents an issue of fact that will need to be determined on a case by case basis, which is what the Trustee seeks to accomplish through this adversary proceeding. Resolving these disputes through a declaratory judgment action in this Court is appropriate

because "whenever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court." *In re Cox*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010) (citations and brackets omitted). Indeed, Bankruptcy Rule 7001 expressly contemplates this Court rendering declaratory judgments concerning the extent of the estate's interest in property. *See* Fed. R. Bankr. P. 7001(2), (9). Thus, the argument by each defendant that this declaratory judgment action should be dismissed for failing to present a judiciable controversy should be rejected out of hand.

14. To be sure, a declaratory judgment concerning the extent of the estate's interest in each fee claim and settlement at issue will serve a "useful purpose" in advancing the administration of this bankruptcy case; entertaining this action is therefore well within the Court's discretion, which is exceptionally broad in this arena. *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-CV-947-J-34HTS, 2009 WL 10671130, at *4 (M.D. Fla. Aug. 11, 2009) (federal courts enjoy "unique and substantial discretion in deciding whether to declare the rights of litigants" and in exercising that discretion, "courts often consider whether a declaratory judgment 'will serve a useful purpose in clarifying and settling the legal relations in issue'").

**B. Defendants' arguments that the fee claims and settlements at issue are not property of the estate are incorrect.**

15. Most of the defendants argue (after arguing that this case does not present a judiciable issue appropriate for declaratory relief) that the estate has no interest in fee claims or settlements despite the authority cited above because, under Florida law, a claim to attorney's fees generally belongs to the client, not attorney.[4] This argument misses the mark.

16. Yes, a fee claim generally belongs to the client and not their attorney. Here, however, there is an agreement to the contrary, namely, the fee agreement assigning the right to

---
[4] *See* Docs. 36, 47, 48.

prevailing party fees to the Debtor. Nothing in Florida law prohibits this arrangement, and the default rule is that a chose in action is freely assignable. *See* 3A Fla. Jur 2d Assignments §§ 3-4 ("Florida law recognizes the general right to assign common law and statutory rights [and] The assignability of choses in action is the rule rather than the exception, and practically the only classes of choses in action which are not assignable are those for personal torts and those based on contracts of a purely personal nature."); R. Regulating Fla. Bar 4-1.15(d) ("Contracts or agreements for attorney's fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements"). Further, because the estate is the real party in interest that stands to gain or lose with respect to the fee claim, it is entirely consistent with Florida law for the estate to pursue these claims in its own name. *See, e.g., Barnhill v. Fla. Microsoft Anti-Trust Litig.*, 905 So.2d 195, 199 (Fla. 3d DCA 2005) ("A person is entitled to intervene when … 'intervenor will either gain or lose by the direct legal operation and effect of the judgment.'") (citations omitted).

17. The scant case law touching on this issue supports that the estate, as assignee of a client's fee claim, may pursue that claim in its own right. *See Tubbs v. Mechanik Nuccio Hearne & Wester, P.A.*, 125 So. 3d 1034, 1044 (Fla. 2nd DCA 2013) (in case involving assignment of prevailing party fee claim, "trial court substituted [attorney] in the litigation as the real party in interest" in fee litigation before awarding law firm fees and costs in its own name). And in other contexts Florida courts have recognized that a claim to attorney's fees may be the subject of an assignment and that the assignee is entitled to pursue fees in their own name. *See Allstate Ins. Co. v. Regar*, 942 So. 2d 969, 972 (Fla. 2d DCA 2006) (assignee of statutory bad faith claim entitled to fees because "entire cause of action was assigned, including [the insured's] right to attorneys' fees.").

18. Each defendant also cites *Faro v. Romani*, 641 So. 2d 69 (Fla. 1994), which holds that an attorney forfeits their claim to a contingent fee upon voluntarily withdrawing from the representation before the contingency occurs.[5] The cases at issue in the Complaint, however, involve circumstances where the Debtor was counsel of record for the Stopa client at the time the relevant contingency is alleged to have occurred, or other facts are alleged that bring the case outside of the circumstances controlled by *Faro*. *See* ¶¶29-35 (alleging that Stopa client obtained involuntary dismissal and moved for fees and that motion to withdraw was then filed, but not granted, and that fee motion was then denied post-petition without obtaining relief from stay); ¶¶50-51 (alleging that Debtor was involuntarily withdrawn as counsel the month before case was involuntarily dismissed without prejudice); ¶¶140-141 (alleging that Debtor represented foreclosure defendant and obtained involuntary dismissal).[6] In short, the citations to *Faro* merely circle back to the central issue that the Trustee maintains should be litigated and resolved through this declaratory judgment action: is the fee claim or settlement at issue sufficiently rooted in the Debtor's pre-petition work to qualify as property of the estate that is protected by the automatic stay? The citation to *Faro* does not support a blanket determination that the estate has no interest in any post-petition fee claims or settlements. To the contrary, until the extent of the estate's interest in each of these matters is resolved by this Court, the estate receives the benefit of any doubt, and the stay applies. *See In re Endeavour Highrise, L.P.*, 432 B.R. 583, 628-29 (Bankr. S.D. Tex. 2010) ("'Arguable property' of the estate is property in 'which the debtor has only an arguable claim of right.' ... When property is determined to be 'arguable

---

[5] *See* Docs. 31, 34, 55, 47, 48.

[6] In the *Deutsche Bank v. Hebert* action at issue in Count XII, the Trustee alleged that Stopa withdrew on September 18, 2018, but that is incorrect. The order withdrawing the Debtor as counsel was actually entered on February 20, 2019, after the Petition Date. The Trustee will be seeking leave to amend the complaint with respect to *Deutsche Bank*.

9

property' of the estate, it should be presumed to be property of the estate" and the automatic stay applies) (citing *Brown v. Chestnut*, 422 F.3d 298 (5th Cir. 2005)).

> **B. The automatic stay protects the estate's interest in fee claims and settlements from any attempt to exercise control over those interests, even indirect attempts, such as by litigating the fee claim in state court or consummating a settlement generated by the Debtor without the Trustee's participation.**

19. Under § 362, the automatic stay applies to protect the estate's interest in fee claims and settlements proceeds that are sufficiently rooted in the Debtor's pre-bankruptcy past to be considered property of the estate; and the stay applies to protect all of these matters until this Court determines that they are not property of the estate. *See Endeavour, supra.* Therefore, acts taken to exercise control over these matters—such as obtaining entry of a state court order that adversely impacts the estate's fee claim (*see* ¶¶29-36) or distributing settlement funds directly to a Stopa client in derogation of the estate's rights (*see* ¶¶154-155)—violate the automatic stay and are void. Indeed, "it is well recognized that actions against nondebtors that would have an 'adverse impact' upon the property of the estate are subject to the automatic stay under § 362(a)(3)." *Johnson*, 548 B.R. at 790 (citations omitted). Thus, it is of no moment that the Debtor may not be a direct party to a state court fee proceeding or settlement: "An action, though it does not name the debtor as a party, is nonetheless subject to the automatic stay when what it seeks may have the effect of collaterally estopping the estate's claims." *Id.* at 794. Here, a determination of a fee claim in the absence of the real party in interest—the estate—would clearly have a detrimental, collateral impact on the estate's ability to recover the same fees. Thus, to the extent certain defendants argue that the automatic stay does not apply to protect the estate's interest in fee claims or settlements (despite arguing that this case does not present a

judiciable controversy),[7] that argument should be rejected.

### C. Engagement agreements need not be attached for the Complaint to state a claim.

20. Several defendants argue that the Complaint should be dismissed because it does not attach the underlying engagement agreement for each Stopa case at issue.[8] That is wrong. This is not an action for breach of the engagement agreement, but even if it were, the Trustee "is not required to attach a copy of the contract to the complaint in order to state a claim upon which relief may be granted." *Westfield Ins. Co. v. Accessibility Specialists, Inc.*, No. 3:10-CV-1140-J-32TEM, 2011 WL 2911528, at *2 (M.D. Fla. July 19, 2011) (citing *Spring Air Int'l, LLC v. R.T.G. Furniture Corp.*, No. 8:10–cv–1200–T–33TGW, 2010 WL 4117627, at *5 (M.D.Fla. Oct.19, 2010)). "It is adequate for Plaintiff to allege that a contract exists, without attaching the contract to the complaint in federal court." *Yencarelli v. USAA Cas. Ins. Co.*, No. 8:17-CV-2029-T-36AEP, 2017 WL 6559999, at *2 (M.D. Fla. Dec. 22, 2017) (collecting cases). Thus, this argument is no basis to dismiss the Complaint.

### D. U.S. Bank's argument that there is no judicial controversy until fees are awarded fails to recognize that contingent claims are property of the estate.

21. U.S. Bank argues with respect to Count II that the claim against it should be dismissed because their Stopa case at issue in the Complaint involves circumstances where a contingency creating entitlement to fees has occurred, but the state court has not yet actually awarded fees.[9] Yet at the same time, U.S. Bank takes the position in state court that the Trustee lacks standing to appear and be heard with respect to a potential award of fees. ¶55. As discussed at length above, the concept of "property of the estate" is broad enough to include the Debtor's

---

[7] Docs. 47, 48.

[8] Docs. 31, 36, 47, 48.

[9] Doc. 55.

11

right to recover fees, even if that right is contingent on further proceedings in state court. And U.S. Bank's state court position that the Trustee has no interest in those fees such that he lacks standing to appear and be heard to defend the estate's interest in state court creates a justiciable controversy that this Court has exclusive jurisdiction to resolve, as explained above. Thus, U.S. Bank's "whipsaw" argument—that the estate lacks a sufficient interest to be heard in state court but that there is no justiciable controversy here because the estate's interest is contingent on future state court proceedings—should be rejected.

> **E. Deutsche Bank and the Heberts' arguments raise disputed issues of fact; the fact that a former Stopa attorney represents the Heberts impacts the analysis; and the Trustee intends to request and should be granted leave to amend to put the balance of the Doc. 191 cases at issue in this adversary proceeding.**

22. Deutsche Bank and the Heberts (former Stopa clients) argue that there is no justiciable controversy presented in Count XII of the Complaint because, contrary to the allegations of the Complaint, ¶154, the parties in the underlying Stopa case have not actually reached a settlement.[10] Essentially, Deutsche Bank and the Heberts argue that the Court should disregard the allegations of the Complaint and instead take defendants at their word that there is no pending settlement. That is not a proper basis to grant dismissal of a Complaint. Instead, the Trustee is entitled to discovery on the status of any settlement.

23. Further, *Deutsche Bank v. Hebert* presents special considerations because the Heberts are apparently represented by a former employee of the Debtor. In that particular circumstance, the estate has an interest in any fees or settlement proceeds obtained even if the event giving rise to entitlement to fees, or the settlement, occurred long after the Debtor withdrew as counsel of record for the Stopa client. *See In re Health Support Network, Inc.*, 585 B.R. 202, 206-08 (Bankr. M.D. Fla. 2018) (explaining that "*Faro* only applies where there is no

---

[10] Doc. 31, 34.

connection between the initial firm and the successor firm" and holding that attorneys who previously worked at dissolving firm owe firm a fiduciary duty to wind up its affairs and account to firm for fees earned from ongoing client transactions).

24. Additionally, the basis of the Trustee's belief that a settlement is pending with respect to *Deutsche Bank v. Hebert* is the Motion to Determine Entitlement to Settlement Funds filed on behalf of Deutsche Bank and other Foreclosure Plaintiffs, located at Doc. 191 in the main bankruptcy case. That motion attaches a list of cases as Exhibit A which, according to the motion, reflects cases in which the parties "reached tacit settlements, settlements in principal, and/or are interested in negotiating settlements." Deutsche Bank claims in its motion to dismiss that the particular case from Doc. 191 alleged in the Complaint, *Deutsche Bank v. Hebert*, is one of cases where the parties are merely "interested in negotiating settlements." Again, that is a matter with respect to which the Trustee is entitled to discovery. However, to determine the status of each of these cases, the Trustee believes it is appropriate to amend the Complaint to seek a declaratory judgment as to each case included in Doc. 191. Such leave should be freely granted. *See* Fed. R. Bankr. P. 7012.

*[Remainder of Page Intentionally Left Blank]*

DATED this 28th day of May 2019.

        GENOVESE JOBLOVE & BATTISTA, P.A.
        *General Counsel to the Chapter 7 Trustee*
        100 N. Tampa Street, Suite 2600
        Tampa, Florida 33602
        Telephone: (813) 439.3100
        Telecopier: (813) 439.3153

By: */s/ Michael A. Friedman*
     Michael A. Friedman, Esq.
     Florida Bar No. 71828
     E-Mail: mfriedman@gjb-law.com
     Lisa M. Castellano, Esq.
     Florida Bar No. 748447
     E-Mail: lcastellano@gjb-law.com
     Eric D. Jacobs, Esq.
     Florida Bar No. 85992
     E-Mail: ejacobs@gjb-law.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of May 2019, a true and correct copy of the foregoing document has been furnished via electronic mail by virtue of the Court's CM/ECF system to all parties registered to receive notices of electronic filing in this case and/or via First Class U.S. Mail, postage prepaid, as detailed in the below Service List

By: */s/ Michael A. Friedman*
     Michael A. Friedman, Esq.

# SERVICE LIST

*Served Via CM/ECF Notification*

Gregory N Blase on behalf of Defendant WELLS FARGO BANK, N.A.
gregory.blase@klgates.com

Lisa M Castellano on behalf of Plaintiff Stephen L. Meininger, as Chapter 7 Trustee
lcastellano@gjb-law.com, lcastellano@gjb-law.com; btraina@gjb-law.com; btraina@ecf.courtdrive.com; abarros@gjb-law.com

Lisa M Castellano, Attorney for Trustee on behalf of Plaintiff Stephen L. Meininger, as Chapter 7 Trustee
lcastellano@gjb-law.com, btraina@gjb-law.com; abarros@gjb-law.com

Patrick J Cremeens on behalf of Defendant JASON HEBERT
patrick@cremeenslaw.com

Patrick J Cremeens on behalf of Defendant SARAH HEBERT
patrick@cremeenslaw.com

Paul W Ettori on behalf of Defendant CITIMORTGAGE, INC.
paul.ettori@akerman.com, michelle.menges@akerman.com

Paul W Ettori on behalf of Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION
paul.ettori@akerman.com, michelle.menges@akerman.com

Paul W Ettori on behalf of Defendant THE BANK OF NEW YORK MELLON
paul.ettori@akerman.com, michelle.menges@akerman.com

Heather Lynn Fesnak on behalf of Defendant CITIMORTGAGE, INC.
heather.fesnak@akerman.com, marykay.siegel@akerman.com

Heather Lynn Fesnak on behalf of Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION
heather.fesnak@akerman.com, marykay.siegel@akerman.com

Heather Lynn Fesnak on behalf of Defendant THE BANK OF NEW YORK MELLON
heather.fesnak@akerman.com, marykay.siegel@akerman.com

Michael A Friedman, Attorney for Trustee on behalf of Plaintiff Stephen L. Meininger, as Chapter 7 Trustee
mfriedman@gjb-law.com, chopkins@gjb-law.com; vlambdin@gjb-law.com; mchang@gjb-law.com

Andrew C Glass on behalf of Defendant WELLS FARGO BANK, N.A.
andrew.glass@klgates.com

Sara F Holladay-Tobias on behalf of Defendant U.S. BANK, N.A.
sfhollad@mcguirewoods.com, sdye@mcguirewoods.com; dblanks@mcguirewoods.com; jmaddock@mcguirewoods.com; dblanks@mcguirewoods.com; rfblair@mcguirewoods.com

Eric D Jacobs on behalf of Plaintiff Stephen L. Meininger, as Chapter 7 Trustee
ejacobs@gjb-law.com, gjbecf@ecf.courtdrive.com; gjbecf@gjb-law.com; chopkins@gjb-law.com; vlambdin@gjb-law.com; btraina@gjb-law.com; abarros@gjb-law.com

Eric D Jacobs, Attorney for Trustee on behalf of Plaintiff Stephen L. Meininger, as Chapter 7 Trustee
ejacobs@gjb-law.com, btraina@ecf.courtdrive.com; btraina@gjb-law.com; chopkins@gjb-law.com; vlambdin@gjb-law.com; abarros@gjb-law.com

Jordan D Maglich on behalf of Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY
jordan.maglich@quarles.com, docketFL@quarles.com; donna.santoro@quarles.com; rebecca.wilt@quarles.com

Courtney A McCormick on behalf of Defendant U.S. BANK, N.A.
cmccormick@mcguirewoods.com, sjerreld@mcguirewoods.com; flservice@mcguirewoods.com

Daniel J Pasky on behalf of Defendant U.S. BANK, N.A.
dpasky@mcguirewoods.com

Wesley L Ridout on behalf of Defendant WELLS FARGO BANK, N.A.
wridout@mcglinchey.com, jshurling@mcglinchey.com

William J Simonitsch on behalf of Defendant WELLS FARGO BANK, N.A.
bill.simonitsch@klgates.com, noris.blanco@klgates.com; maxine.lewis@klgates.com; raquel.sanz@klgates.com; stephen.mcguinness@klgates.com

Mark E Steiner on behalf of Defendant BANK OF AMERICA, N.A.
MES@lgplaw.com, pm@lgplaw.com

April Hosford Stone on behalf of Creditor The Bank of New York Mellon fka The Bank of New York, as Trustee (CWABS 2005-16)
astone@tromberglawgroup.com, ecf@tromberglawgroup.com

*Served Via U.S. Mail*

BSI Financial Services, Inc.
c/o Bruce W. Woodard, Registered Agent
510 Savona Court
Altamonte Springs, FL 32701

CitiMortgage, Inc.
c/o Shawn Kormanek, Director
1000 Technology Drive
O'Fallon, MO 63368

Deutsche Bank National Trust Company
c/o Kenneth Scott Cousens
305 North Second Avenue, Suite 198
Upland, CA 91786

Deutsche Bank National Trust Company
c/o President or Corporate Officer
1114 Avenue Of The Americas, Suite 3900
New York, NY 10036

Deutsche Bank National Trust Company
c/o President or Corporate Officer
1761 E. St. Andrews Place
Santa Ana, CA 92705

Deutsche Bank National Trust Company
c/o President or Corporate Officer
305 North Second Avenue, Suite 198
Upland, CA 91786

Federal National Mortgage Association
c/o Celeste Mellet Brown, EVP, CFO
3900 Wisconsin Avenue NW
Washington, DC 20016

HMC Assets, LLC
c/o Cogency Global, Inc.
115 North Calhoun Street, Suite 4
Tallahassee, FL 32301

MTGLQ Investors, L.P.
c/o C T Corporation Systems
1200 South Pine Island Road
Plantation, FL 33324

Dede M. Buckmaster
James F. Buckmaster
4752 Cranberry Road
North Port, FL 34286

James F. Buckmaster
Dede M. Buckmaster
1001 S. Wapello St.
North Port, FL 34286

Joshua A. Crithfield
10717 Donbrese Avenue
Tampa, FL 33615

Cameron Foster  
3306 Lake Saxon Drive  
Land O Lakes, FL 34639

Carol A. Kay  
207 W. Idlewild Avenue  
Tampa, FL 33604

Toshiaki Mizutani  
Cleosida Mizutani  
6813 80th Terrace North  
Pinellas Park, FL 33781

Cameron K. Foster  
3215 Leona St.  
Tampa, FL 33629

Prince Morrison  
2859 NW 7th Street  
Fort Lauderdale, FL 33311

Jennifer Nix  
7222 Ursula Avenue  
Brooksville, FL 34601